Bryan L. Clobes (BC 7273)
**CAFFERTY FAUCHER LLP**
1717 Arch Street, 36th Floor
Philadelphia, PA 19103
Phone: 215-864-2800
Fax: 215-864-2810

*Additional Counsel Listed on Signature Page*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CUSTOM AUDIO VIDEO,<br><br>                Plaintiff,<br><br>    vs.<br><br>SHARP ELECTRONICS CORPORATION, SHARP CORPORATION, SAMSUNG ELECTRONICS, CO., LTD., SAMSUNG SEMICONDUCTOR, INC., LG.PHILIPS LCD CO., LTD., LG.PHILIPS LCD AMERICA, INC., IPS ALPHA TECHNOLOGY, LTD., TOSHIBA CORPORATION, TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO., LTD, MATSUSHITA ELECTRIC INDUSTRIAL CO., PANASONIC CORPORATION OF NORTH AMERICA, HITACHI LTD., HITACHI DISPLAYS, LTD., HITACHI AMERICA, LTD., HITACHI ELECTRONIC DEVICES (USA), INC., SANYO EPSON IMAGING DEVICES CORPORATION, AU OPTRONICS CORPORATION, AU OPTRONICS CORPORATION AMERICA, CHI MEI CORPORATION, CHI MEI OPTOELECTRONICS CORPORATION, CHI MEI OPTOELECTRONICS USA, INC., NEC LCD TECHNOLOGIES, LTD., NEC ELECTRONICS AMERICA, INC., NEC CORPORATION, INTERNATIONAL DISPLAY TECHNOLOGY CO., LTD., INTERNATIONAL DISPLAY TECHNOLOGY USA, INC., NEXGEN MEDIATECH USA, INC. and HANNSTAR DISPLAY CORPORATION,<br><br>                Defendants. | CASE NO.:_____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, Custom Audio Video, on behalf of itself and all others similarly situated, brings this action under the federal antitrust laws, Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("Sherman Act") and Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15 ("Clayton Act"). This complaint arises from the illegal and anticompetitive conduct of Defendants in connection with the market for Liquid Crystal Display ("LCD") that uses Thin-Film Transistor ("TFT") technology to improve the image quality of electronic devices. The allegations herein are made on information and belief, except those as to plaintiff, which are made with personal knowledge.

## NATURE OF THE ACTION

1. This antitrust action arises out of a conspiracy among defendants and their co-conspirators, which had the purpose and effect of fixing, raising, maintaining, and stabilizing artificially the price at which Thin Film Transistor Liquid Crystal Display ("TFT-LCD") was sold in the United States. This action is brought on behalf of a class ("Class") consisting of all persons and entities who purchased TFT-LCD directly from the named Defendants in the United States during the period from approximately January 1, 2000 through the present (the "Class Period"). As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for TFT-LCD during the Class Period.

2. Defendants are the leading manufacturers of TFT-LCD, which is utilized in the manufacture of televisions, computers, monitors, mobile phones, personal digital assistants ("PDAs") and other electronic devices, and control the majority of the TFT-LCD industry, which annually generates worldwide revenues in excess of $69 billion. As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class paid artificially inflated prices for TFT-LCD during the Class Period. Such prices exceeded the amount they would have paid if the

1

price for TFT-LCD had been determined by a competitive market.

## JURISDICTION AND VENUE

3.     This action arises under Section 1 of the Sherman Act and Section 4 of the

Clayton Act.

4.     Jurisdiction of this Court is founded on Sections 4 and 16 of the Clayton Act, 15

U.S.C. §§ 15, 26 for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and on 28 U.S.C.

§§ 1331, 1337.

5.     Venue as to Defendants is proper in this district pursuant to 15 U.S.C. §§ 15(a),

22, and 28 U.S.C. § 1391(b), (c), in that more than one Defendant resides in the judicial district,

is licensed to do business and/or is doing business in this judicial district.  The interstate trade

and commerce described herein has been carried out, in part, within this district.

## PARTIES

6.     Plaintiff Custom Audio Video ("CAV") is a corporation organized and existing

under the laws of South Carolina and has its principal place of business in Bluffton, South

Carolina.  During the Class Period, CAV purchased TFT-LCD from one or more of the

Defendants.

7.     Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics"), a Korean

corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, taepyung-ro

chung-gu, Seoul, Korea.  Samsung Electric controls an integrated global enterprise comprised of

itself and other entities including Defendants Samsung Semiconductor, Inc. and Samsung

Electronics America, Inc.  During the Class Period, Samsung Electronics manufactured, sold

and/or distributed TFT-LCD throughout the world, including the United States.

2

8. Defendant Samsung Semiconductor, Inc. ("Samsung Semiconductor") is a California corporation with its principal place of business located at 3655 North First Street, San Jose, California 95134. Samsung Semiconductor, Inc. is a wholly owned and controlled subsidiary of Defendant Samsung Electronics Co., Ltd. During the Class Period, Samsung Semiconductor manufactured, sold and/or distributed TFT-LCD throughout the United States.

9. Defendants Samsung Electronics and Samsung Semiconductor are referred to individually and collectively herein as "Samsung".

10. Defendant LG.Philips LCD Co., Ltd. ("LG.Philips") is a Korean entity with its principal place of business located at 20 Yeouido-dong, Yeongdeungeungpo-gu, Seoul 150-721, Korea. LG.Philips is a joint venture created in 1999 by Royal Philips Electronics NV and LG Electronics. LG.Philips controls an integrated global enterprise comprised of itself and other entities, including Defendant LG.Philips LCD America, Inc. LG.Philips maintains offices in San Jose, California. During the Class Period, LG.Philips manufactured, sold and/or distributed TFT-LCD throughout the United States.

11. Defendant LG.Philips LCD America, Inc. ("LG.Philips America") is an entity organized under the laws of California, with its principal place of business located at 150 East Brokaw Rd., San Jose, CA 95112. During the Class Period, LG.Philips America manufactured, sold and/or distributed TFT-LCD throughout the United States.

12. Defendants LG.Philips and LG.Philips America are referred to individually and collectively herein as "LG.Philips".

13. Defendant Sharp Corporation ("Sharp Corp.") is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka

3

545-8522, Japan.  Sharp Corp. controls an integrated global enterprise comprised of itself and other entities including Defendant Sharp Electronics Corporation.  During the Class Period, Sharp Corp. manufactured, sold and/or distributed TFT-LCD throughout the United States.

14.      Defendant Sharp Electronics Corporation ("Sharp Electronics") is a wholly owned and controlled subsidiary of Sharp Corp., with its principal place of business located in this district at Sharp Plaza, Mahwah, New Jersey 07430.  During the Class Period, Sharp Electronics manufactured, sold and/or distributed TFT-LCD throughout the United States.

15.      Sharp Corp. and Sharp Electronics Corporation are referred to individually and collectively herein as "Sharp".

16.      Defendant IPS Alpha Technology, Ltd. ("IPS") is a business entity organized under the laws of Japan, with its principal place of business at 3732, Hayano, Mobara, 297-0-0037, Japan.  IPS is a joint venture formed by Defendant Hitachi Ltd., Defendant Toshiba Corporation, and Defendant Matsushita Electric Industrial Co., Ltd.  During the Class Period, IPS manufactured, sold and/or distributed TFT-LCD throughout the United States.

17.      Defendant Toshiba Corporation ("Toshiba") is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period, Toshiba manufactured, sold and/or distributed TFT-LCD throughout the United States.

18.      Defendant Toshiba Matsushita Display Technology Co., Ltd. ("Toshiba-Matsushita") is a business entity organized under the laws of Japan, with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Toshiba-Matsushita is a joint venture between Defendant Toshiba Corp. and Defendant

4

Matsushita Electric Industrial Co., Ltd. During the Class Period, Toshiba-Matsushita manufactured, sold and/or distributed TFT-LCD throughout the United States.

19. Defendant Matsushita Electric Industrial Co. ("Matsushita Electric") is a business entity organized under the laws of Japan, with its principal place of business at 1006 Oaza Kadoma, Kadoma City, Osaka 571-8501, Japan. Matsushita Electric controls an integrated global enterprise comprised of itself and other entities, including Defendant Panasonic Corporation of North America. During the Class Period, Matsushita Electric manufactured, sold and/or distributed TFT-LCD throughout the United States.

20. Defendant Panasonic Corporation of North America, formerly known as Matsushita Electric Corp. of America ("Panasonic"), oversees the North American business operations of Defendant Matsushita Electric. Panasonic is a Delaware corporation with its principal place of business located in this district at 1 Panasonic Way, Secaucus, New Jersey 07094. During the Class Period, Panasonic manufactured, sold and/or distributed TFT-LCD throughout the United States.

21. Matsushita Electric and Panasonic are referred to individually and collectively as "Matsushita".

22. Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 4-6 Kanda-Surugadai Chiyoda-ku, Tokyo, 101-8010, Japan. Hitachi, Ltd. controls an integrated global enterprise comprised of itself and other entities, including Defendants Hitachi Displays, Ltd., Hitachi America, Ltd. and Hitachi Electronic Devices (USA), Inc. During the Class Period, Hitachi Ltd. manufactured, sold and/or distributed TFT-LCD throughout the United States.

5

23.     Defendant Hitachi Displays, Ltd. ("Hitachi Displays") is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg., 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo, 101-0022, Japan.  During the Class Period, Hitachi Displays manufactured, sold and/or distributed TFT-LCD throughout the United States.

24.     Defendant Hitachi America, Ltd. ("Hitachi America") is a wholly owned and controlled subsidiary of Defendant Hitachi, Ltd.  Hitachi America, Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York 10591.  During the Class Period, Hitachi America manufactured, sold and/or distributed TFT-LCD throughout the United States.

25.     Defendant Hitachi Electronic Devices (USA), Inc. ("Hitachi Electronic Devices") is a wholly owned subsidiary of Defendant Hitachi, Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, South Carolina 29607. During the Class Period, Hitachi Electronic Devices manufactured, sold and/or distributed TFT-LCD throughout the United States.

26.     Defendants Hitachi, Ltd., Hitachi Displays, Hitachi America and Hitachi Electronic Devices are referred to individually and collectively as "Hitachi".

27.     Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd.  It began operations on October 1, 2004.  The joint venture combines the LCD operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15f, 2-4-1 Hamamatsu-cho, Minto-ku, Tokyo, Japan.  During the Class Period, Sanyo Epson

6

manufactured, sold and/or distributed TFT-LCD throughout the United States.

28.     Defendant NEC Corporation ("NEC Corp.") is a business entity organized under the laws of Japan, with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001 Japan. NEC Corp. controls an integrated global enterprise comprised of itself and other entities, including Defendants NEC LCD Technologies, Ltd. and NEC Electronics America, Inc. During the Class Period, NEC Corp. manufactured, sold and/or distributed TFT-LCD throughout the United States.

29.     Defendant NEC LCD Technologies, Ltd. ("NEC LCD") is a wholly owned and controlled subsidiary of Defendant NEC Corp., and is an entity organized under the laws of Japan, with its principal place of business located at 1753 Shomonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666 Japan. During the Class Period, NEC LCD manufactured, sold and/or distributed TFT-LCD throughout the United States.

30.     Defendant NEC Electronics America, Inc. ("NEC America") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California, and its manufacturing plant in Roseville, California. During the Class Period, NEC America manufactured, sold and/or distributed TFT-LCD throughout the United States.

31.     Defendants NEC Corp., NEC LCD and NEC America are referred to individually and collectively herein as "NEC".

32.     Defendant Chi Mei Corporation is located at No. 11-2, Jen Te 4th St., Jen Te Village, Jen Te, Tainan 717, Taiwan, R.O.C. Chi Mei Corporation owns Chi Mei Optoelectronics Corporation, which claims to be the world's largest and most sophisticated TFT-

LCD manufacturer.

33.     Defendant Chi Mei Optoelectronics Corporation ("Chi Mei Optoelectronics") is a leading manufacturer of TFT-LCD and has its global headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan R.O.C.  Chi Mei Optoelectronics controls an integrated global enterprise comprised of itself and other entities, including Defendants Chi Mei Optoelectronics USA, Inc. and Nexgen Mediatech USA Inc.  During the Class Period, Chi Mei Optoelectronics manufactured, sold and/or distributed TFT-LCD throughout the United States.

34.     Defendant Chi Mei Optoelectronics USA, Inc. ("Chi Mei USA") is a wholly owned and controlled subsidiary of Chi Mei Optoelectronics and has its corporate headquarters at 101 Metro Drive, Suite 510, San Jose, California.  During the Class Period, Chi Mei USA manufactured, sold and/or distributed TFT-LCD throughout the United States.

35.     Defendant International Display Technology Co., Ltd. ("International Display") is an entity organized under the laws of Japan, with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan.  Defendant International Display is a wholly owned subsidiary of Defendant Chi Mei Optoelectronics Corporation. During the Class Period, Defendant International Display manufactured, sold and/or distributed TFT-LCD throughout the United States.

36.     Defendant International Display Technology USA, Inc. ("International Display USA") is a corporation with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California.  Defendant International Display USA is a subsidiary of Defendant Chi Mei Optoelectronics.  During the Class Period, International Display USA manufactured, sold, and/or

distributed TFT-LCD during the Class Period throughout the United States.

37.     Defendant Nexgen Mediatech USA, Inc. ("Nexgen") is a wholly owned subsidiary of Chi Mei Optoelectronics Corporation, and/or its affiliates, with its principal place of business at 14500 Proctor Ave., City of Industry, CA 91746.  Nexgen sells TFT-LCD throughout the United States.

38.     Chi Mei Corporation, Chi Mei Optoelectronics, Chi Mei USA, International Display, International Display USA and Nexgen are referred to individually and collectively herein as "Chi Mei".

39.     Defendant AU Optronics Corporation is Taiwan's largest manufacturer of TFT-LCD and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C.  AU Optronics controls an integrated global enterprise comprised of itself and other entities including Defendant AU Optronics Corporation America.  During the Class Period, AU Optronics Corporation manufactured, sold and/or distributed TFT-LCD throughout the United States.

40.     Defendant AU Optronics Corporation America ("AU America") is a wholly owned and controlled subsidiary of Defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas.  AU America has a facility located in San Diego, California.  During the Class Period, AU America manufactured, sold and/or distributed TFT-LCD throughout the United States.

41.     AU Optronics Corporation and AU America are referred to individually and collectively herein as "AU Optronics".

42.     Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer

of TFT-LCD products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu chiu, Taipei 114, Taiwan, R.O.C. During the Class Period, HannStar manufactured, sold and/or distributed TFT-LCD throughout the United States.

43.     On information and belief, other partnerships, corporations, or other business entities, unknown to Plaintiff, are co-conspirators with Defendants in their unlawful restraint of trade. These other co-conspirators have facilitated, adhered to, participated in, and/or communicated with others regarding the conspiracy.

44.     The conduct alleged herein was Defendants' conduct or actions ordered or done by Defendants' officers, agents, employees, or representatives, while engaged in the usual management of Defendants' business.

## INTERSTATE TRADE AND COMMERCE

45.     Throughout the Class Period, Defendants sold and shipped substantial quantities of TFT-LCD in a continuous and uninterrupted flow of transactions in interstate commerce throughout the United States, including in this District.

46.     The unlawful activities of Defendants that are subject of this Complaint were within the flow of, and have had a direct and substantial effect on, interstate trade and commerce.

## RELEVANT PRODUCT AND GEOGRAPHIC MARKET

47.     To the extent necessary, the relevant product market is the market for TFT-LCD Products sold as flat panel monitors or pre-installed in various computers, televisions, mobile phones, PDAs and other electronic devices to direct purchasers of TFT-LCD Products. The relevant geographic market is the entire United States. At all relevant times, including the present, all Defendants' collective market share in the relevant product and geographic markets

is a vast majority of the market share.

## FACTS

### The TFT-LCD Market

48.     LCD, or liquid crystal display, is a thin, flat display device that is used in televisions, computer screens, and numerous other electronic applications, such as music devices, cameras and PDAs.  Thin film transistor liquid crystal display, or TFT-LCD, is a variant of LCD that uses advanced transistor technology to improve the image quality of the LCD.

49.     At the portion of its website entitled "How TFT-LCD Works" Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three sub-pixels consisting of red, green, and blue.  The number of pixels arranged in a display determines the resolution of the TFT-LCD.  TFT is composed of the data line (image signal transfer) and gate line (TFT on/off signal transfer).  TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass electrode in order to adjust the molecular array of liquid crystals.  Such change in the molecule direction of liquid crystals alters the amount of light penetrating the liquid crystal layer.  Consequently, the TFT-LCD display shows picture image information.

50.     The company describes some of the applications for TFT-LCD technology as follows:

> TFT-LCD technology has created a wide range of computer and consumer products that would have not been possible with cathode ray tubes (CRT).  The flat and thin attributes of LCDs make them ideal for mobile or portable applications.  In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure.  Initially, LCDs were incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors.  Through innovation, TFT-LCD engineers were able to develop displays providing much higher resolution than CRT's, in addition

11

to producing them in larger sizes.

Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications are now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next generation cell phones and wireless networks.

51.     The market for TFT-LCD Products is huge and growing. For example, according to a report released in November 2006 by a market research company, iSuppli, sales of large-sized TFT-LCD panels are expected to unseasonably rise to 154.3 million units during the first half of 2007, up 23.7 percent from 124.7 million in the first half of 2006 – and even up 6.3 percent from 145.2 million units in the second half of 2006.

52.     In 2005, the TFT-LCD market grew by more than 25% to approximately $70 billion, and it is estimated that this market will double in value by 2010.

53.     Since the TFT-LCD market is dominated by a group of manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct alleged herein. According to published reports, in 2005, a handful of Defendants possessed large market shares - Samsung had approximately 21% of the market, LG.Philips had 22%, AU Optronics had 14% and Chi Mei had 12%.

54.     During the Class Period, the TFT-LCD market has also experienced significant consolidation, cross-licensing agreements and joint venture collaborations among TFT-LCD manufacturers. For example, AU Optronics was created in 2001 as a result of the merger of two

12

manufacturers - Acer display and Unipac Optoelectronics. More recently, AU Optronics acquired Quanta Display.

55.     The market for the manufacture and sale of TFT-LCD is subject to high manufacturing and technological barriers to entry, some of which are described in Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation available at its website. Efficient fabrication plants are large and costly. TFT-LCD is also subject to technological advances, so that firms within the industry must undertake significant research and development expenses.

56.     The TFT-LCD industry is also the subject of numerous joint ventures among Defendants. Toshiba-Matsushita is a joint venture between Toshiba and Matsushita Electric; LG.Philips LCD Co., Ltd. is a joint venture between LG Electronics and Royal Philips Electronics; IPS Technologies is a joint venture among Toshiba, Matsushita Electric and Hitachi Ltd.; and Seiko Epson Imaging Devices was a joint venture between Seiko Epson Corp. and Sanyo Electric Co., Ltd.

57.     Some of the Defendants are known antitrust violators. Samsung, for example, was fined $300 million by the United States Department of Justice ("DOJ") in October of 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. It is also under investigation by the DOJ (along with some of the other Defendants) for fixing prices of Static Random Access Memory.

**Defendants' Illegal Price-Fixing Conduct**

58.     Commencing on or about January 1, 2000, the exact date being unknown, Defendants entered into a conspiracy, which had the purpose and effect of fixing, raising,

13

maintaining and stabilizing the price of TFT-LCD at artificially inflated levels.

59.     On December 11, 2006, Defendant LG.Philips LCD, Co., Ltd. disclosed in its Form 6-K filed with the Securities Exchange Commission that it is being investigated by authorities in the U.S., Korea and Japan for alleged anticompetitive practices in the TFT-LCD market.  In addition, LG.Philips disclosed that officials from the Korean Fair Trade Commission searched its Seoul, Korea headquarters on December 8, 2006, and that its offices in Japan had also received a notice from the Japanese Fair Trade Commission ("JFTC"), and that the DOJ had issued a subpoena to its office in the U.S., located in San Jose, California.

60.     The investigation into price fixing in the $70 billion LCD industry is being coordinated between U.S. South Korean, Japanese and European regulators.

61.     It has been reported that the probe is aimed at investigating price fixing, including during the period preceding the World Cup when LCD prices rose sharply, as well as alleged production-limiting agreements to counter price declines.

62.     On December 11, 2006, the JFTC ordered numerous other TFT-LCD manufacturers – Sharp, Seiko Epson, NEC LCD Technology, Hitachi Display, Toshiba-Matsushita, IPS, Samsung Electric, LG.Philips, AU Optronics and Chi Mei Electronics – to report their sales, profits, and other financial information to the JFTC.

63.     The DOJ has subpoenaed information from other Defendants.  Sharp's U.S. subsidiary has acknowledged receipt of a DOJ subpoena served on December 8, 2006.  Chi Mei's U.S. subsidiary has also confirmed being contacted by the DOJ.  A spokeswoman for Samsung said the company's subsidiaries in the U.S. have also been served with DOJ subpoenas.

64.     Following LG.Philips's December 11, 2006 announcement of the price-fixing

14

investigation, numerous TFT-LCD manufacturers, including AU Optronics and Sharp, also confirmed that they were under investigation by various governmental agencies.

65.     Speaking of the investigation into the conduct of Defendants LG.Philips and Samsung, Akinori Yamada, a director of management and planning at Japan's Fair Trade Commission, stated that "[t]he subject of the probe is price fixing." News reports have also indicated that, according to "an unnamed source at the South Korean Fair Trade Commission and the U.S. Department of Justice," the LG.Philips and Samsung probe is targeting "possible collusion in [LCD] panel prices." U.S. Department of Justice spokeswoman Gina Talamona said that the agency is "investigating the possibility of anticompetitive practices."

66.     *The New York Times* reported on December 12, 2006 that the European Commission has confirmed that it has also opened a price-fixing investigation into companies that manufacture TFT-LCD Products.

67.     Michael Min, an analyst at Korea Investment and Securities, has been quoted as saying that the investigations may be focused upon a period over the last several years when manufacturers of TFT-LCD products were charging comparable prices.

68.     Another report indicated that Defendants may face the "largest antitrust penalty ever in an investigation of possible price fixing in the $69 billion industry." This same article projected that fines could exceed $1 billion. *See* Bloomberg.com article, dated Dec. 15, 2006 at: http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=avpgLdPWWblg.

69.     Other indications have suggested that Defendants have engaged in collusive activity to manipulate the prices for TFT-LCD Products by agreeing to reduce the supply of these products.

70.     With the growing popularity of LCD televisions, Defendants began expanding production ahead of demand.  On information and belief, the zenith of the LCD production in the industry - and corresponding surplus of TFT-LCD products - occurred in or around June of 2006.

71.     Chris Connery, an LCD industry analyst at DisplaySearch, was quoted in a June 13, 2006 article as predicting that LCD manufacturers would soon create an artificial "Crystal Cycle."  A Crystal Cycle is an industry term that refers to shortages in the supply of LCDs.  The article further reports that "[a]t a recent conference in Taiwan, a leading producer of LCD glass stated publicly that the industry should collectively look at cutting back on production [of LCDs] from 100 percent to 85 percent. Otherwise, if supply outpaces demand, manufacturers will be forced to cut prices."  When asked if it was likely that the LCD manufacturers would actually create a Crystal Cycle artificial supply shortage, Connery replied, "the chatter is growing louder each day."

72.     Similarly, Samsung's presentation described above noted that "it was possible to secure a reasonable amount of profit while following the industry leaders."

73.     Just a few days after the June 13 article, Defendant LG.Philips announced that it was decreasing LCD production and lowering its outlook for the second quarter of 2006, which it claimed was due to weaker than expected seasonal demand and larger than expected price declines.

74.     Defendants and their co-conspirators have engaged in a contract, combination, trust or conspiracy, the effect and purpose of which was to fix, maintain, stabilize, and/or raise the prices at which they sold TFT-LCD Products at artificially inflated levels.

16

## CLASS ACTIONS ALLEGATIONS

75.     Plaintiff brings this action both on behalf of itself, and as a class action pursuant

to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of the following class (the

"Class").

> All individuals and entities who, during the period from approximately January 1,
> 2000 through the present (the "Class Period"), purchased Thin Film Transistor
> Liquid Crystal Display (TFT-LCD) in the United States directly from the
> defendants or their subsidiaries.  Excluded from the Class are defendants and their
> parents, subsidiaries, affiliates, all governmental entities, and co-conspirators.

76.     The Class is so numerous that joinder of all members is impracticable.  Due to the

nature of the trade and commerce involved, Plaintiff believes that the members of the Class are

geographically dispersed throughout the United States, and that joinder of all Class members

would be impracticable.  While the exact number of Class members is unknown to Plaintiff at

this time, Plaintiff believes that there are, at least, thousands of members of the Class and that

their identities can be learned from Defendants' books and records.

77.     Plaintiff's claims are typical of the claims of the other members of the Class.

Plaintiff and the members of the class purchased TFT-LCD at artificially maintained, non-

competitive prices established by the actions of Defendants and their unnamed co-conspirators in

connection with the restraint of trade alleged herein.  Plaintiff and the members of the class have

all sustained damage in that they paid inflated prices for TFT-LCD due to Defendants' conduct

in violation of federal law as complained of herein.

78.     Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class action and antitrust litigation.

79.     Defendants have acted or refused to act on grounds generally applicable to the

Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

80.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the class. Among the questions of law and fact common to the Class are:

       (a)    Whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain, or stabilize the price of TFT-LCD sold in the United States;

       (b)    Whether the conduct of Defendants caused the prices of TFT-LCD to be artificially inflated;

       (c)    Whether Defendants' conduct caused injury to the members of the Class and, if so, the proper measure of damages; and

       (d)    Whether Defendants undertook actions to conceal the unlawful contract, combination or conspiracy described herein.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## ANTITRUST INJURY TO PLAINTIFF AND THE CLASS

82.     On or about January 1, 2000, the exact date being unknown to Plaintiff, Defendants entered into a continuing contract, combination or conspiracy to unreasonably

18

restrain trade and commence in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. These

activities included the following:

   (a)    Participating in meetings and conversations to discuss the price of TFT-
          LCDs sold in the United States;

   (b)    Agreeing during those meetings and conversations to charge prices as
          specified levels and otherwise to fix, increase, stabilize and/or maintain
          prices of TFT-LCDs sold in the United States;

   (c)    Selling TFT-LCDs at the agreed upon prices; and

   (d)    Selling TFT-LCDs to various customers throughout the United States at
          artificially inflated prices.

83.    The conspiracy alleged herein had an is having the following effects, among

others:

   (a)    Prices charged to Plaintiff and the Class for TFT-LCD have been raised,
          fixed, maintained or stabilized at artificially inflated, non-competitive
          levels;

   (b)    Plaintiff and the Class have been deprived of the benefits of free, open and
          unrestricted competition in the market for TFT-LCD; and

   (c)    Competition in establishing the prices paid in the United States and
          worldwide for TFT-LCD has been unlawfully restrained, suppressed and
          eliminated.

84.    By reason of the violations of Section 1 of the Sherman Act and Section 4 of the

Clayton Act, Plaintiff and members of the Class have sustained injury. As a direct result of

Defendants' conduct, the injury sustained by Plaintiff and the Class is the payment of

supracompetitive prices for TFT-LCDs. This is an antitrust injury of the type that the federal

laws were meant to punish and prevent.

19

## FRAUDULENT CONCEALMENT

85.     Plaintiff and members of the Class did not discover and could not discover through the exercise of reasonable diligence the existence of the conspiracy alleged herein until December 11, 2006, when it was first publicly reported that manufacturers of TFT-LCDs were under investigation by antitrust authorities in the United States, Europe, Japan, and South Korea for conspiring to fix prices of TFT-LCDs.

86.     Because Defendants' agreements, understandings, and conspiracies were kept secret until December 11, 2006, Plaintiff and members of the Class before that time were unaware of Defendants' unlawful conduct alleged herein, and they did not know before that time that they were paying artificially high prices for TFT-LCDs throughout the United States during the Class Period.

87.     The affirmative acts of the Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

88.     By their very nature, Defendants' price-fixing conspiracy was inherently self-concealing.  The TFT-LCD industry is not exempt from antitrust regulation, and thus, before December 11, 2006, Plaintiff reasonably considered it to be a well-regulated competitive industry.

89.     In the context of the circumstances surrounding Defendants' pricing practices, Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable person that Defendants' pricing was conspiratorial.  Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' prices

20

before December 11, 2006.

90.     Plaintiff and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

91.     Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until December 11, 2006, when reports of the investigations into price-fixing in the TFT-LCD industry were first publicly disseminated.

92.     None of the facts or information available to Plaintiff and members of the Class prior to December 11, 2006, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to December 11, 2006.

93.     As a result of Defendants' fraudulent concealment of their conspiracy, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and members of the Class have as a result of the anticompetitive conduct alleged in this Complaint.

**COUNT I**
**VIOLATION OF SECTION 1 OF THE**
**SHERMAN ACT AND SECTION 4 OF THE CLAYTON ACT**

94.     Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

21

95. Defendants entered into and engaged in a contract, combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act.

96. The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants in furtherance of which Defendants instituted, fixed, maintained, raised or stabilized prices for TFT-LCD. Such contract, combination or conspiracy constitutes a *per se* violation of the federal antitrust laws and is an unreasonable and unlawful restraint of trade.

97. Defendants' contract, combination, agreement, understanding or concerted action occurred in or affected interstate and international commerce. Defendants' unlawful conduct was through mutual understandings or agreements by, between and among Defendants.

98. The contract, combination or conspiracy has had the following effects:

(a) Prices charged to Plaintiff and the Class for TFT-LCD were raised, fixed, maintained or stabilized at higher, artificially inflated, non-competitive levels;

(b) Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for TFT-LCD; and

(c) Competition in establishing the prices paid for TFT-LCD has been unlawfully restrained, suppressed and eliminated.

99. As a proximate result of Defendants' unlawful conduct, Plaintiff and Class members have been injured and will continue to be injured by directly purchasing TFT-LCD from the Defendants at higher prices than Plaintiff and Class members otherwise would have paid and will pay in the absence of Defendants' unlawful conduct. Plaintiff and Class members have sustained injury to their business and property in an amount to be determined at trial.

22

100.    Plaintiff and Class members are also entitled to an injunction against Defendants, preventing and restraining the violations alleged herein. If not permanently enjoined, the unlawful contract, combination, or conspiracy will continue and cause irreparable harm to Plaintiff and members of the Class, who have no adequate remedy at law.

## COUNT II

### UNJUST ENRICHMENT

101.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

102.    Defendants have been unjustly enriched through overpayments by Plaintiff and Class members and the resulting profits.

103.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by Plaintiff and Class members.

104.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for relief as follows:

A.    That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified

23

as a class representative and Plaintiff's counsel be appointed as counsel for the Class;

      B.     That the unlawful contract, combination or conspiracy alleged herein be adjudged and decreed to be: (1) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, as alleged in Count I; and (2) acts that constitute unjust enrichment, as set forth in Count II;

      C.     That Plaintiff and the Class recover damages, as provided by law, determined to have been sustained as to each of them, in an amount to be trebled in accordance with the antitrust laws, and that judgment be entered against Defendants on behalf of Plaintiff and of the Class;

      D.     That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other conspiracy alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of TFT-LCD Products, information concerning bids or offers of competitors;

      E.     That Plaintiff and the Class members be awarded restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

      F.     That Plaintiff and members of the Class be awarded pre- and post-judgment

24

interest, and that that interest be awarded at the highest legal rate from and after the date of

service of the initial complaint in this action;

      G.    That Plaintiff and the Class recover their costs of the suit, including attorneys'

fees, as provided by law, and

      H.    That Plaintiff and members of the Class have such other, further, and different

relief as the case may require and the Court may deem just and proper under the circumstances.

DATED:  February 28, 2007

By: s/  Bryan Clobes
    Bryan L. Clobes (BC 7273)
    Ellen Meriwether
    Michael S. Tarringer
    Timothy Fraser
    **CAFFERTY FAUCHER LLP**
    1717 Arch Street, 36th Floor
    Philadelphia, PA 19103
    Tel: (215) 864-2800

    Julian H. Toporek
    Attorney at Law
    221 West York Street
    Savannah, Georgia  31401
    Tel: (912) 236-4666

    Robert S. Schachter
    **ZWERLING SCHACTER**
      **& ZWERLING LLP**
    41 Madison Avenue
    New York, NY  10010
    Tel: (212) 223-3900

    Nathan N. Neuman
    Law Offices of Nathan N. Neuman
    700 Lake Drive
    Ambler, PA  19002
    Tel: (215) 646-9520

    Attorneys for Plaintiff and the Class

25

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiff, by its attorneys, hereby certifies that the matter in controversy is also the subject of the following actions:

| Caption | Docket No. | Court |
|---|---|---|
| *Nathan Muchnick, Inc. v. Sharp Corp., et al.* | 06-cv-06107-SRC | D.N.J. |
| *Roberta Harrell v. LG. Philips LCD Co., LTD et al.* | 06-cv-06190-SDW | D.N.J. |
| *Richard A. Markham v. LG Philips LCD Co., et al.* | 06-cv-06191-SDW | D.N.J. |
| *Eliasoph v. LG Philips LCD Co., LTD. et al.* | 06-cv-07588-SI | N.D. Cal. |
| *Henderson v. LG Philips LCD Co., LTD. et al.* | 06-cv-07609-MEJ | N.D. Cal. |
| *Nash v. LG Philips LCD Co., LTD et al.* | 06-cv-07601-MMC | N.D. Cal. |
| *Dr. Steven Martel v. Sharp Corporation et al.* | 06-cv-07888-EDL | N.D. Cal. |
| *Sorokin v. LG Philips LCD Co., LTD. et al.* | 06-cv-07600-WDB | N.D. Cal. |
| *Forlan v. LG Philips LCD Co., LTD. et al.* | 06-cv-07602-SBA | N.D. Cal. |
| *Elbaz v. LG Philips LCD Company Ltd. et al.* | 06-cv-14423-JGK | S.D.N.Y. |
| *Baker v. LG Philips LCD Co., Ltd., et al.,* | 06-cv-14335-JGK | S.D.N.Y. |
| *Maites v. LG Philips LCD Co., LTD. et al* | 06-cv-07638-SI | N.D. Cal. |
| *H. Truong v. LG Philips LCD Co., LTD et al* | 06-cv-07639-MMC | N.D. Cal. |
| *Crago Corporation v. Samsung Elec. Co. Ltd. et al.* | 06-cv-07644-SC | N.D. Cal. |
| *S. Truong v. LG Philips LCD Co., LTD. et al* | 06-cv-07640-SBA | N.D. Cal. |
| *Audio Video Artistry v. Samsung Elec. Co. Ltd. et al.* | 06-cv-02848-SHM | W.D. TN. |
| *Brock v. LG Philips LCD Co., LTD. et al* | 06-cv-07679-JL | N.D. Cal. |
| *Kerson v. LG Philips LCD co., LTD. et al* | 06-cv-07678-BZ | N.D. Cal. |
| *Rozo v. LG Philips LCD Co., LTD. et al* | 06-cv-07693-CW | N.D. Cal. |
| *Hakim v. LG Philips LCD Co., LTD. et al.* | 06-cv-07699-MJJ | N.D. Cal. |
| *Ferencskik v. LG. Philips LCD Co. et al.* | 06-cv-06714-FB | E.D.N.Y. |

I hereby certify that the following statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 28, 2007

s/ Bryan Clobes
Bryan L. Clobes

26